Good morning. Good morning. May it please the Court, Michael Bekesha, on behalf of Appellants Daniel Bill, Brian Hanania, and Michael Mountpass, all officers of the Phoenix Police Department, I'd like to reserve approximately five minutes for rebuttal. Got it. In an effort to solve a crime, Appellants Warren Brewer and Heather Palumbo, detectives of the Phoenix Police Department, obtained the appellant's DNA without a warrant and without individualized suspicion. Can we stop there for a second? Why wasn't there a warrant in this case? Why wasn't the order issued by Judge Reyes as a Superior Court judge in which he found that there was probable cause to believe that your clients had evidence that would lead to the solution of a crime a warrant? It wasn't a warrant because Judge Reyes didn't find that there was probable cause. His order says probable cause. There was probable cause that under the statute, the statute had three provisions. The statute, as I know, says only reasonable suspicion. Right. But Judge Reyes issued a neutral magistrate, looked at the affidavits in this case, and said there is probable cause to believe that your clients have evidence that will assist in the solution of a crime. Why wasn't the warrant requirement completely satisfied then? I think for two reasons, Your Honor. The first reason is not all the evidence that was necessary to be presented to the judge was presented. Where is that in your brief? We referenced it in the opening brief. I don't have an exact page. In a footnote. It was in a footnote, Your Honor. In a footnote. So let's assume that all the evidence – let's assume that you haven't – that you waived that argument for the moment. Yes, Your Honor. Just focus on what Judge Reyes did. The State went to a neutral magistrate. They presented evidence. The neutral magistrate concluded that there was probable cause to believe that your clients had evidence relating to the commission of a crime. And he issued an order requiring them to provide that evidence. That order may have been wrong. It may have been completely wrong. But why did the defendants in this case do anything wrong if they went to a neutral magistrate, presented the evidence to the magistrate, and got an order? Sure. Your Honor, with respect to the findings of Judge Reyes, which was on page ER39, he found that there was probable cause that a crime had been committed. Right. We agree with that. He then found that the procurement of saliva sample by mouth may contribute to the identification of the individual who committed the offense. He didn't find probable cause that evidence would be found to help solve the crime. He found there was probable cause that a murder took place and that there was reasonable that, as he said, there was that it may contribute to the identification or the exclusion. So let me ask you a question. Go ahead. Could I just on that point, if I may? Okay. He said it will contribute to solving that case. But wasn't he talking about that it's going to contribute by eliminating DNA that might be contaminant DNA, as opposed to perpetrator DNA? Yes, Your Honor. That's correct. The purpose of getting the order was to try to exclude my client's DNA because some partial unknown DNA was found. And no point did anybody believe that my clients committed the crime or were suspects of committing the crime. Then why isn't this under sort of normal special needs rubric, where police have a special need to eliminate contaminant DNA from consideration as they go about trying to solve a crime? You know, the case law is pretty clear that when it comes to the special needs exception, that's not for law enforcement purposes. It's for other purposes besides those to trying to solve a crime. Police do use it on times to investigate different things, but it's never to solve a crime. And I think that's the difference here. The special needs exception does not apply simply because this was a law enforcement investigation. They were trying to solve a murder. So that exception doesn't apply. If I understand correctly, it was the logic of Judge Bolton that however you slice it, you know, the overriding Fourth Amendment principles apply. And when, at the end of the day, there was nothing unreasonable about asking someone who's at a crime scene who may have, you know, possibly contaminated part of the evidence to give a un-invasive sample that's not going to be sent to the FBI index. There's nothing unreasonable about that, given the totality of the whole shebang. What's wrong with that analysis? I would say that there's no precedent of this Court or the Supreme Court that says you jump directly to a free-form totality of circumstances balancing test. I think this Court, the law of this Court, says if you have a warrantless, suspicionless search, it's unconstitutional if it doesn't fall into one of the exceptions, and that was the Friedman case. And I wish that were the Supreme Court's jurisprudence. I'm not sure it is. But so how does the police department go about this? They have a bunch of people at the scene. They want to eliminate some of the people as suspects. They all happen to be employees of the police department, so that gets us into the special needs issue. Is there any way they can do so? There would probably be two ways for that. One way is what the city originally tried to do, which was to negotiate with my clients. But they don't want to. Your clients don't want to. My clients were opposed to the city maintaining the DNA for 50 years. But the question, I'm just talking about obtaining it right now. Is there any way, if your clients say we don't want to give it to you, that the city can obtain it? I think after the fact, after a crime takes place, no. However, for example. So in your view, there's no way that the law enforcement authorities in this case can eliminate the police officers as possible contaminants of the weapons with DNA? Without violating the Fourth Amendment. That's correct, Your Honor. Okay. For that reason, police departments around the country, for example, Las Vegas, they're starting to collect CERN DNAs or CERN profiles DNA of individual officers as a condition of employment. The city of Phoenix collects fingerprints and some other information from officers. So you don't object to the city saying to a police officer who, at the date of employment, we want your DNA? That's a different analysis. I know. I'm asking you. Of course it's different. That's why I'm asking. Do you object? We would not object because it would be a condition of employment, which means the officers would know when they applied to become a police officer that their DNA would be taken and placed in a storage bank. No Fourth Amendment violation. Under the Supreme Court, there is no violation there. That's the NTEU case and other cases. But in your view, there's no way that the city can go to a judicial officer and say we have this need and we want to obtain the DNA under the following conditions. We're not going to give it away, et cetera, et cetera. And the judicial officer has to say I'm powerless to do so because there's no suspicion that your client has committed a crime. It sounds frustrating for the law enforcement trying to solve this crime, but that's  And I would like to correct your Honor. There's no probable cause and it's not an exception. Unless the court carves out a new exception to the Fourth Amendment, such a taking would violate the Fourth Amendment. Counsel, I'd like you to return on special needs. I realize that there's precedent that you can't use a special needs search as a But is there any precedent saying you can't make a special needs search in order to eliminate innocent people who may have contaminated a crime scene, making it more difficult for the investigation? There isn't any precedent directly on point, Your Honor. I think that's a question that hasn't been addressed, but I think all the cases talking about special needs talk about how they're not, they're searches for non-law enforcement purposes. For example, recently this court had a USV folks. That was somebody being placed into a prison, had something lodged in his rectum, and the police wanted to remove it. And the special needs the court talks about there was to prevent contraband from being in the prison. They found that that wasn't the main reason why the search was done and the contraband was pulled out of the arrestee's rectum. It was because they wanted the cocaine. And they wanted it for law enforcement purposes. And in that instance, the court found that there were no exceptions to the warrant requirement and that a warrant should have gone. But the law enforcement purpose in that case would be to have a criminal remedy against the guy who had the cocaine hidden in his body. That's correct, Your Honor. And since the DNA has been processed, it was analyzed, the DNA did not match. Now, the question that always comes to mind is, well, what if the Phoenix Police Department and the two appellees in this case said it was for exclusionary purposes and then there was a match? Then what happens? And so it's a slippery slope if you start saying that the police can — And then what happens may be that if your clients are charged with a crime, they can exclude that evidence in a proceeding. But this is a different type of suit alleging a civil rights violation. Yeah. We already know in this case your clients didn't commit the crime because they're tracked. We know where they are when the crime occurs. Right, Your Honor. So your clients are never going to be charged with a crime in this case. I just want to get back to how do we know where they were when the crime was committed? The GPS on the cars, on the radios. Okay. Let me stop. The GPS is in the car or they carry it around with them? I'm not 100 percent sure because it was an issue at the lower court, but I believe The radios are the handheld kind that we always see, the Phoenix police? Yes, Your Honor. So let me just — I'm just trying to just — I'm not saying they did it, but I mean, it's not inconceivable that the radio could be left in the car and they could go to the crime scene, is it? I mean, to where the — All of the plaintiffs were with colleagues. And they weren't. But I mean, the GPS and the radio doesn't prove it or disprove it because it's possible to leave the radio in the car. Now, they have other answers to it to explain their whereabouts, but that's not the all-in-end-all, the radios, right? I guess it is possible, Your Honor, and it's another reason why the Fourth Amendment applies in this case. I mean, you can see a defense attorney, if they ever charge somebody with a crime over this, you know, using that as an example of how, you know, maybe somebody's DNA might have gotten there even though the radio shows a different location. You can see how prosecutors preparing for a trial would want to be able to answer that. Absolutely, Your Honor. And I think that's why there's a concern in this case that the DNA was taken. And if there was an eventual violation of the Fourth Amendment, why would we have to wait until further down the road to handle what the problem is here? Let me ask you, did I understand you correctly? I may have misunderstood what you said. But did I understand you correctly that you have no problem with the condition of employment that they should — they can be given their — be required to turn over their DNA? With all due respect, I'll clarify my statement. I'm not sure what my specific clients would believe. I haven't talked to them about that. I'm not his personal opinion. I mean, it's a matter of law. Legal opinion based on the law. That's correct. There would be nothing wrong. There wouldn't be a violation of the Fourth Amendment if it was a condition of employment, and police departments around the country are starting to do that because of these concerns. How about a condition of employment that the officer must obey an order by the chief to give a swab? That could — that could be a — that's not — I don't believe that's an issue in this case. No, I just made it up. I'm just asking you. I think a condition of employment is to follow the rules and orders of the chief of police. That's correct, Your Honor. That would be okay as a matter of law. I don't think it would be, Your Honor. Now that I take a moment and think about it, I think it still runs into the Fourth Amendment issues and a search. We're talking about DNA. We're talking about what everybody agrees is a search, and for a search to take place, it must satisfy the Fourth Amendment, so — which means a warrant, probable cause, individualized suspicion, and I see my — You're down to a minute and a half. I want you to reserve some time, but I think Judge Hurwitz has a — I have a question, but I think you can answer it yes or no. With respect to your claim for nominal damages, does qualified immunity apply? If — yes, it does. Thank you. Thank you very much. Mr. Hyde. Good morning, Your Honors. May it please the Court, Robert Hyde for Detectives Brewer and Palumbo. The district court's order of dismissal should be affirmed for two reasons. First, this was a minimally invasive search. It was authorized by a neutral magistrate, and it was based upon individualized suspicion, and the officer's DNA is protected by extensive safeguards. Second, this case does present a circumstance where the individuals being searched faced no criminal consequences regardless of what was found. If the officer's DNA had been found on the weapons in Sergeant Trent's patrol car, it would mean simply that that DNA was the result of crime scene contamination, not that these officers were suspects. The complaint in this case seeks three types of relief. It seeks nominal damages, and your opponent concedes that we apply a qualified immunity analysis to that. So let's assume that goes away under qualified immunity just for purposes of my question. Can you address their request for declaratory and injunctive relief? Assuming there's a Fourth Amendment violation here, what would a declaration say and what would an injunction do? Your Honor, as I understand your question, my understanding of what the officers are asking for is a declaration that this search was unconstitutional. They're asking for an injunction requiring these detectives to destroy the DNA swab that was taken. That injunction underscores a very important point here. What is being maintained is not the officer's DNA profile. It is, in fact, the swab. The officer's DNA is not entered into any database, not the Phoenix database, not CODIS. It's not going to be used for any purpose other than this suit. The only thing that is being retained is the equivalent of a Q-tip. So that gets to my question. Let's assume there was an illegal seizure for just purposes of my question. Is there a Fourth Amendment violation in not returning the swab? In other words, I'm not sure what an injunction would do in this case. Police came into my house and took a fingerprint illegally. Do I have the right? Does the Fourth Amendment give me the right to get the fingerprint back? I don't believe it does, Your Honor. Just that we can exclude it from evidence in a proceeding. That's right, Your Honor. This is not like the seizure of someone's personal property. This is not like the seizure of a car that was seized improperly. You could then apply to get your car back because it was the result of an improper search. Further complicating this issue, Your Honor, is the fact that Arizona State law requires the Phoenix Police Department to maintain this DNA, the cheek swab itself, for another approximately 50 years. Well, but they're saying you obtained it unconstitutionally. Arizona State law can't trump the Constitution. And I'm trying to figure out what part of the Constitution tells me that they're entitled to the swab back. Certainly, Your Honor. There's an underlying intellectual principle behind what you're getting at. And the fingerprint's an excellent analogy. If the police obtained your fingerprints improperly, I think the Fourth Amendment would allow you to exclude the entry of that fingerprint into something else, into another database that could be searched, absent further judicial involvement. But you've agreed to that already. That's right, Your Honor. I think the same thing here. The DNA profile, it's not entered into any database. If it had been entered into the database, perhaps, Your Honors, could fashion some type of order to require us to remove it from that database. But right now, it is simply a piece of identifying information that could be entered at some point in the future. And I've taken you off track. Go back to your Fourth Amendment. Go back to your basic argument about why there was no violation. But I was interested in the injunctive relief part of this case. Certainly, Your Honor. As Judge Gould was asking about, this is not a normal law enforcement scenario. This is not the scenario in which the individuals being searched were suspects. This was a very narrow order that allowed the detectives only to obtain a cheek swab. And that cheek swab is only used for identification. If, as Judge Silverman asked, it turned out later that these two policemen were suspects in the case for some other reason, a witness said, I saw them do the crime, could you use the DNA? Under that hypothetical, I believe no, Your Honor. The representations by— It has to be no under any hypothetical, doesn't it? Because if you were taking this DNA in order to— if you want to use this DNA to prosecute these people, the special needs doctrine wouldn't work, would it? That would be correct, Your Honor. I think under the scenario in which these particular officers become suspects later, I would concede the detectives' affidavits to the court indicate that these officers were not suspects. And there was nothing in those affidavits indicating that they were suspects. It was very clear from the get-go that these were exclusionary. I think there would be a Fourth Amendment issue to then sidestep what was said to Judge Reyes and turn these folks into suspects. However, if the application under 133905 did indicate that these officers were suspects and the strictures of the statute were met, I believe there would not be a Fourth Amendment violation. I believe 133905 is harmonious with the Fourth Amendment, assuming the strictures of 133905 are followed. But 1339 only requires a finding of reasonable belief, right? The statute does not say probable cause. That's right, Your Honor. However, this statute, like many other State statutes, has its genesis in Davis v. Mississippi, which has been cited for the dicta in that case that under certain highly structured scenarios, fingerprints can be taken on something less than probable cause. Right. But what I'm interested in is in this case, Judge Reyes signed an order that said probable cause. That's right, Your Honor. Probable cause to believe that these two police officers had DNA and then reasonable belief that it might lead to elimination of suspects to a crime. I'm rewording. The point is your opponent said he didn't find probable cause on both ends. He found only probable cause that these people had DNA, but not probable cause that it would solve the crime. Are both necessary? Under traditional search warrant jurisprudence, no, Your Honor. The probable cause is whether or not the evidence is found in the location to be searched and that that evidence may help solve the crime. There's not a probable cause requirement on both prongs. So just under standard Fourth Amendment analysis, you don't have to have probable cause that the evidence will solve the crime? I don't. The belief is enough? I believe so, Your Honor. Suppose they forget these officers. Suppose they think the janitor at the Capitol did it and they want to get his DNA. What do they do? What can they do? Your Honor, assuming there is reasonable belief or probable cause to believe that Sergeant Renth was the victim of a homicide, there is some individualized suspicion between that janitor and this crime or crime scene. These detectives would go to a neutral magistrate, just like Judge Reyes, present an affidavit. So they can get the same order that, in effect, they got in this case. Is that what you're saying? Assuming there is some connection between that janitor and the crime scene. So my witness said, I saw the janitor leave the scene. Right. And to be clear, Judge Silverman, are we to assume that the detectives are suspecting that this janitor was a perpetrator? Yes. Right. And say so to the judge. Assuming, Your Honor, that the detectives were clear to the judge, the janitor is a suspect, the affidavit set out the requisite nexus between this janitor and this crime. They'd get the same order against the janitor that they got against the plaintiffs, basically. For identifying information, yes, Your Honor. Now suppose, again, we're in Never Never Land here, but suppose somehow some witnesses come forward, I think Judge Hurwitz suggested it, who now put the finger on the plaintiffs and they lead them to believe they're not just at the scene investigating the crime. They were the perpetrators of the crime. What do they do? Can they go to Judge Reyes just as they did and do it again, or do they have to do it again? I think Judge Gould properly indicated that the remedy, if criminal charges were brought for this first search, would likely be exclusion of that DNA evidence. I'm not saying there's a remedy. I'm not saying we've gotten to court yet. I mean, they're still trying to solve the crime. Can they then go back and get a do it again? I mean, can't they just treat him like they would the janitor? I believe under current jurisprudence, under Fourth Amendment and the Arizona jurisprudence under 133905, the detectives could approach a neutral magistrate like Judge Reyes and obtain a similar detention order to obtain the DNA, assuming all the affidavit strictures were met. So they'd have to just basically duplicate what they did. Yes, Your Honor. Obviously, the affidavit would be different. The affidavits in this case indicate that these officers are not suspects. There would have to be an affidavit indicating why these officers. We're just kind of brainstorming kind of where we go with all this. I'm not at all clear we'd have to exclude a specimen that was lawfully obtained, but that's for some other case or a TV show or something. I would agree, Your Honor. That question does not have to be answered in order to rule in the constitutionality here. Your opponent says, and let's assume that they've preserved this argument for a second, that there were deficiencies in the affidavit. How do you respond to that? Assuming they have preserved it, and in our response brief we do argue that we do not agree that they've preserved it. Really, what they're saying needed to be in the affidavits were the exact locations that they were far enough away from the, when they arrived they were not close enough to these places to have deposited the DNA. Yes. Judge Hurwitz, I would believe that that would, I'm sorry, I would argue that that would be a hyper-technical requirement. The affidavits were clear that these folks were not suspects. They were also clear that these officers may have inadvertently deposited their DNA. Whether or not they were 15 feet, 14 feet, or 16 feet is a hyper-technical requirement. Judge Reyes fully understood what was going on, and in order to say, well, they were 15 feet, and that makes it material to his, Judge Reyes' determination, there also has to be a missing piece of evidence, which is 15 feet necessarily means that a person cannot inadvertently deposit their DNA on that evidence. Where was the evidence exactly? The DNA evidence? It was found on one of Sergeant Drenth's weapons and on his patrol car. They didn't forget how far he was, 15 feet or 6 feet, at the time of the, the time they responded. Maybe I've seen too many crime stories, but it's not inconceivable that they could have been in that police car before they're both police officers, right? I mean, isn't it possible that they could have deposited DNA at some other occasion, some other time using that car, being a passenger in the car? Is that out of the realm of possibility? Certainly that's not in the record. There's no allegation that that was. There are approximately 2,500 sworn Phoenix police officers. What we, what we do know in this record is that there was one unknown male DNA profile on two key pieces of evidence. His patrol car and on one of his weapons. How, how, how far was, I can't tell from the record. I know they were separated, these two pieces of evidence. How far were they separated? I'd, I'd be speculating, but approximately. If the record doesn't tell me, don't, don't speculate. Okay. They were separated. Sergeant Drenth was not in his patrol car when he was killed. Right. And, and my difficulty with the 15 feet and 30 feet stuff is I can't tell what it's from. Is it 15 feet from the patrol car? Is it 15 feet from the body? Is it 15 feet from the weapon? Well, there is a key distinction in there, Judge Hurwitz. What the officers claim is that they were not within 15 feet of Sergeant Drenth's weapons and his body. None of the officers alleged in the complaint exactly how close they were to the patrol car. The patrol car is one of the locations where the unknown DNA was found. So we don't know exactly how close they were. I couldn't tell that from the record. Thank you. Is there any reason to believe they've never had any other contact with the patrol car? No, Your Honor, but there's also no reason to believe they did have any contact with the patrol car. That's not in the record. If there are no further questions or questions from Judge Gould, I'm happy to turn over to Mr. Bekesha. Thank you, Mr. Hurwitz. No questions here. Thanks. Thank you, Your Honors. Thank you. A couple quick points. First, we keep talking about identification, and identification tends to be a loaded term these days. Marilyn V. King focused on identification. But in that instance, it was identifying the individual. We've always known who my clients are. There's no dispute who they are. So identification is not really the proper term in this case. The reason the two detectives took my client's DNA was to determine whether or not their DNA was at the crime scene. This was 100 percent a law enforcement investigation under Freedman binding precedent at this court. That cannot be used under the special needs exception. You know, there was discussion about a janitor and what would be needed if the janitor was suspected of committing the crime, or even if my clients were doing so. In that case, the Arizona statute wouldn't be necessary. The officers could have just sought a search warrant from Judge Reyes under probable cause individualized suspicion. I don't even think that that Arizona statute would properly apply. All the Arizona cases talking about the statute, there's always been the Fourth Amendment. There's always been probable cause. But if you have probable cause individualized suspicion, the statute's irrelevant. It's not needed. So in this instance, I say my time is out. Roberts. Yes. Thank you very much. Thank you very much. Mr. Hyde, thank you as well. The case just argued is submitted. We'll stand and recess for the morning. Judge Gould, we'll see you in the conference room.
judges: Silverman, Gould, Hurwitz